**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**


**THOMAS E. STENNETT,**

      **Plaintiff,**                        **Case No. 05-74358**

**v.**                                          **District Judge George Caram Steeh
Magistrate Judge R. Steven Whalen**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action under 42 U.S.C. § 405(g) for review of the final decision of Defendant Commissioner of Social Security denying disability insurance benefits (DIB). The parties have filed cross-motions for summary judgment which have been referred for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment be DENIED, Plaintiff's motion for summary judgment GRANTED, and the case remanded for an award of benefits.

**I.    PROCEDURAL HISTORY**

Plaintiff applied for DIB on September 10, 2003, alleging disability as of June 29, 2001 due to degenerative disc disease (Tr. 40-42, 46). His claim was denied initially, and in May of 2005, a hearing was held before Administrative Law Judge (ALJ) Melvyn B. Kalt.

Plaintiff, represented by counsel, testified at the hearing, as did Vocational Expert (VE) Raymond Dulecki. On June 9, 2005, the ALJ issued a written decision finding Plaintiff not disabled (Tr. 11-18). The Appeals Council denied Plaintiff's request for review (Tr. 4-6), making the ALJ's opinion the final decision of the Commissioner.

## II.  FACTS

Plaintiff, born in 1957, was 47 years old at the time of the administrative decision (Tr. 17-18). He is a high school graduate, with some college, and worked as a designer/engineer from 1983 to 2001 (Tr. 52, 166-67).

### A.  Plaintiff's Testimony

Plaintiff testified that during his approximately 18 years as a computer designer and engineer, he sat most of the day, but occasionally walked from department to department (Tr. 166-67). He said that he became disabled from working in June of 2001, when he underwent surgery for disc herniation (Tr. 167). He testified that he had minor relief after this surgery, but the symptoms were still persistent and noticeable. After surgery, he took Vicodin and Darvocet for pain (Tr. 167-68).

Plaintiff testified that he underwent a second back surgery in May of 2003, after he ruptured a disc. At that time, he was having pain in his mid-back, radiating to his waist and feet, and numbness in the back of the thigh and left buttock. Walking more than half a block would increase the pain (Tr. 168-69).

Plaintiff stated that currently he wears a back brace. He takes Vicodin or hydrocodone and Motrin 800 for pain (Tr. 170). He said that when his pain is aggravated,

he takes Vicodin one to three times per day. His pain, he stated, occurs daily, although the level fluctuates, flaring up often and at unpredictable times (Tr. 170-71). He testified that he currently takes Vicodin four or five days out of the week. The Vicodin makes him tired, he said, but takes the edge off the pain (Tr. 171-72).

The Plaintiff testified that he can lift five to ten pounds, and can stand for an hour or an hour and a half (Tr. 172). He said that he can sit for only 20 to 30 minutes before having to change positions. He stated that the greatest relief comes from lying down horizontally with his legs elevated, and that he must do this between three and five hours per day (Tr. 173). Plaintiff stated that he was still seeing his surgeon, Dr. Ahlgren, and that he may require fusion surgery at some point in the future (Tr. 173-4).

Plaintiff testified that he lives alone. He vacuums at a very slow pace, and it might take him three days to do the whole house. He does laundry, but in small loads (Tr. 174-75). His sister and brother help him at times with the housework (Tr. 181).

Plaintiff said that after his first surgery, he completed an eight-week physical therapy session. He tried to start a second session, but it aggravated his pain. He quit physical therapy at that time because his doctor told him that a second surgery was an option (Tr. 179-80). In August of 2003, after the second surgery, he started a home exercise program (Tr. 180).

### B. Medical Evidence

On July 5, 2001, Plaintiff was admitted to Beaumont Hospital through the emergency

room (Tr. 87). He was treated by Dr. Langnas, who noted that the Plaintiff had a 20 year history of intermittent back pain (Tr. 81). An MRI of the lumbosacral spine revealed a large disc herniation and extruded disc fragment at L5-S1 (Tr. 85).

Subsequently, Plaintiff underwent physical therapy at Dequindre Physical Therapy and Rehabilitation Services, beginning July 27, 2001 (Tr. 119). The intake notes indicate that the Plaintiff's chief complaint was "slight" pain in low back and thigh, numbness in left buttocks, thighs and feet, and an occasional burning sensation. Despite the characterization of Plaintiff's pain as "slight," the report also noted that "[t]he pain is at the level of 2-8 on a scale of 0-10 with 0 as no pain," and further stated that "[o]n July 5th he was in so much pain he had to go [to] the emergency room and was hospitalized for four days...." (Tr. 119). Finally, the report stated that "[p]ain increases with certain positions, prolonged standing, sitting, decreased with medication, heat and rest." *Id.* The Plaintiff discontinued physical therapy on December 4, 2001, following the surgery discussed below (Tr. 100).

Dr. Bradley D. Ahlgren, M.D., was Plaintiff's treating physician and surgeon. On August 9, 2001, he wrote that the Plaintiff "is off of work and he would like to get back but he is unable to do so at this time." (Tr. 145). Dr. Ahlgren recommended physical therapy, but noted that "[i]f [Plaintiff] is having persistent symptoms, he may be a candidate for surgical intervention." (Tr. 145).

On September 14, 2001, Dr. Ahlgren performed the first of two back surgeries, a lumbar laminotomy with partial discectomy at L5/S1. The diagnosis was L5/S1 disc herniation (Tr. 96). Dr. Ahlgren described the Plaintiff as having a history of back pain with

-4-

radiating pain into his lower extremities, and noted that an MRI was consistent with a large disc herniation (Tr. 96). He noted that the Plaintiff had persistent pain despite non-operative treatment, but also advised the Plaintiff that he "could have surgery and have persistent problems with pain, radiating pain, numbness, tingling, or weakness," and further that "he could have increasing problems with pain over time or recurrent disc herniation" (Tr. 96).

On January 17, 2003, Dr. Ahlgren recorded that Plaintiff had experienced a great increase in pain in the left lower extremity, and had difficulty ambulating (Tr. 133). By February 28, 2003, Dr. Ahlgren noted minimal relief with pain medication, and that Plaintiff was "still unable to sit; must stand or lie down." *Id*. On March 3, 2003, an MRI revealed a new disc herniation at L1-L2, causing mild to moderate compression on the thecal sac and S1 nerve root, as well as possible persistent or recurrent disc herniation at L5-S1 (the site of the first surgery) (Tr. 125).

On March 17, 2003, Plaintiff underwent a second back surgery, a revision lumbar laminectomy with diskectomy at the left L5-S1 (Tr. 122). Dr. Ahlgren cautioned that this procedure carried a significant risk of persistent problems with pain or radiating pain. *Id*. However, the doctor noted that prior to this second surgery, the Plaintiff "was having increasing problems with pain and radiating pain to a very severe level." *Id*.

On April 17, 2003, one month after the second surgery, the Plaintiff told Dr. Ahlgren that the pain had decreased, self-assessing it at a level 2 out of 10. At that time, Plaintiff was using Vicodin, approximately one tablet every four to six hours (Tr. 130). Examination showed negative straight leg raising bilaterally and no significant strength deficits in the

lower extremities; however, X-rays showed degenerative disc disease at L5-S1 and mild narrowing at L1-L2 (Tr. 130).

On August 14, 2003, physician's assistant Mike Broad, who works with Dr. Ahlgren, noted that Plaintiff complained of continued pain in the lower back. The pain, he said, "swings around quite a bit and is definitely exacerbated by actions such as prolonged sitting greater than approximately 60 minutes at this point." Plaintiff related "that he has to change positions frequently to find relief from lying to standing to sitting" (Tr. 126). The Plaintiff rated his pain at "2-3 on an average with definite exacerbations," stating that Vicodin "does help significantly relieve his pain." *Id.* PAC Broad noted that Plaintiff was not attending physical therapy due to financial considerations ("secondary to cost") (Tr. 126). He stated that Plaintiff "needs to be off work at this stage." *Id.*

### C.  VE's Testimony

VE Dulecki classified Plaintiff's past work as a designer as sedentary and skilled (Tr. 181-82). He said that if the Plaintiff's testimony were considered fully credible, he could not perform his past work or any work (Tr. 182). The ALJ presented the following questions to the VE:

> Q: [The work] did not require lifting in excess of 10 pounds, and did not require either prolonged sitting or prolonged standing. He could stand a long time if he wanted, or he could sit a long time if he wanted, but he wouldn't have to.
>
> A: Well the need, the need to lie down, of course, prevents any employment that I'm aware of at the frequency he's talking about. The previous work would require prolong [sic] sitting. So that, that would not be possible to return to that given your hypothetical set there on that, so that–

-6-

Q: Okay. What about other work?

A: Yeah, sedentary work would exist. In industrial setting about 6,000 [jobs], work as a visual inspector, hand packager, or station assembler. Another 3,500 service related positions such as a ticket taker or a lobby attendant would fit that, those are unskilled sedentary jobs." (Tr. 182-83).

The VE said that his testimony was consistent with the Dictionary of Occupational Titles (DOT) (Tr. 183). On examination by Plaintiff's counsel, the VE testified that the inspection, assembly and packaging positions were "production type" jobs, where the rule of thumb is that "besides the normal lunch breaks no more than 5 minutes out of an hour can be spent nonproductively." (Tr. 183). He testified that the ticket taker position fit within the sit-stand option because "with some of them there is a stool there so you can alternate between seated and standing." (Tr. 184).

### C.  The ALJ's Decision

The ALJ found that the Plaintiff had the residual functional capacity (RFC) to do sedentary work with a sit-stand option, and no complex or detailed tasks "due to pain complaints and use of pain medication" (Tr. 16). Although he found that Plaintiff could not perform his past relevant work as a designer/engineer, he could perform other work in the national economy, specifically visual inspector, packager and assembler, ticket taker and lobby attendant, and therefore was not disabled under the Social Security Act (Tr. 16-19). In making his non-disability finding, the ALJ noted that the Plaintiff had discontinued physical therapy after the first surgery due to improvement, and that he took "only an occasional Vicodin which is inconsistent with allegations of disabling fatigue" (Tr. 15). The

ALJ also said that the treating physician's chart did not indicate complaints about the side effects of pain medication, and the Plaintiff characterized his pain as mild (Tr.15-16). He also said that there was no further aggressive treatment after the two surgeries (Tr. 16).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984).

## V.   ANALYSIS

Plaintiff argues that his complaints of disabling pain are supported by objective medical evidence, and that the ALJ therefore erred in finding otherwise. He also argues that the ALJ did not properly consider the adverse side effects of his pain medication, and erroneously determined that his activities of daily living were consistent with the ability to do sedentary work. Finally, Plaintiff argues that the Commissioner's decision to deny him benefits is not supported by substantial evidence. Although framed as discrete issues, these arguments are interrelated, and will therefore be discussed together.

The ALJ rejected the Plaintiff's complaints of disabling pain, stating, "The objective

clinical findings do not substantiate the claimant's testimony regarding the extent of his limitations" (Tr. 16). In making this finding, however, the ALJ both misapplied the test for evaluating pain set forth in *Duncan v. Secretary of HHS*, 801 F.2d 847 (6th Cir. 1986), and gave an inappropriately selective reading to the medical evidence.

*Duncan* set the standard for reviewing subjective complaints of pain. "First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonable be expected to produce the allege disabling pain." *Id.*, 801 F.2d at 853.

The starting point in scrutinizing subjective complaints of pain under *Duncan* is to determine if there is objective medical evidence of an underlying medical condition. Plaintiff, who underwent two back surgeries in a period of about 18 months, easily passes that test. Based on examination and imaging tests (MRI's), Plaintiff was diagnosed with a large disc herniation and extruded disc fragment at L5-S1 (Tr. 85), and, after the first surgery, with a new disc herniation at L1-L2 as well as persistent or recurrent herniation at L5-S1(Tr. 124-25). X-rays following the second surgery showed degenerative disc disease at L5-S1 and narrowing at L1-L2 (Tr. 130). Indeed, the ALJ found that "[t]he medical evidence establishes that the claimant is status post two lumbar laminectomies...." (Tr. 17).

As to the second part of the *Duncan* test, the evidence produced at the administrative hearing overwhelmingly shows that the Plaintiff's objectively established medical condition

is of such severity that it could reasonably be expected to produce disabling pain.[1]  In making a determination under this second prong of *Duncan*, an ALJ must consider several factors set forth in 20 C.F.R. §404.1529(c)(3):

> Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e/g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

In this case, the ALJ overstated the import of Plaintiff's daily activities, while understating the significance of his medication regimen, his treatment, the intensity and frequency of his pain, and the measures the Plaintiff finds necessary to relieve his pain.

In terms of daily activities, the ALJ stated as follows: "The claimant testified that he lives alone and is able to perform household chores at a slow pace. Therefore, the claimant's activities are consistent with a sedentary lifestyle" (Tr. 16). He then concluded that the Plaintiff "has the residual functional capacity for sedentary work with the ability to alternate between sitting and standing as needed." There is, however, a profound difference between an individual with a sedentary *lifestyle* and one having a sedentary RFC, and the ALJ erred

---

[1] Plaintiff points out that in *Kent v. Sullivan*, 788 F.Supp. 541 (N.D. Ala. 1992), the court found that along with other conditions, disk herniation at L3-4 could reasonably be expected to produce disabling pain.

in conflating the two concepts. The Plaintiff testified that it might take him three days to vacuum his entire house, and that he is restricted to doing laundry in small loads. While this might suggest an individual with a sedentary lifestyle, it hardly portrays a person who can perform a sedentary-level job five days a week, eight hours a day. In *Walston v. Gardner,* 381 F.2d 580, 586 (6th Cir. 1967), the Sixth Circuit addressed this very issue:

> "The fact that appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this appellant possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by appellant. *A man is disabled within the meaning of the Act, if he can engage in substantial gainful activity only by enduring great pain.*" (Emphasis added).

*See also Carradine v. Barnhart*, 360 F.3d 751, 755-56 (7th Cir. 2004) (the ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week").

The ALJ gave short shrift to the Plaintiff's course of treatment, stating that he "recovered well" from his first surgery, and that after two surgeries, "[n]o further aggressive treatment has been necessary" (Tr. 16).[2] First of all, back surgery–and Dr. Ahlgren characterized both surgeries as risky–*is* aggressive treatment. Secondly, if the first surgery was so successful, why was a second surgery necessary? In *O'Nan v. Secretary of HHS*, 1988 WL 26062 (6th Cir. 1988), the plaintiff, like Mr. Stennett, had chronic low back pain and radiating pain down her lower extremities as the result of a disc herniation. The ALJ in

---

[2] This statement itself is open to question, given that Plaintiff was told that fusion surgery might be in his future (Tr. 173-74).

that case rejected the plaintiff's credibility regarding her pain, in part because her doctor recommended conservative treatment rather than surgery. Remanding for benefits, the Sixth Circuit stated, at *3:

> "There can be no question that this lady had a bad back, and we are not prepared to say that she had to submit to the surgeon's knife in order to prove it."

Similarly in the present case, how many surgeries should Mr. Stennett be required to undergo to prove that he has chronic and intractable back pain?

Nor is the Plaintiff's cessation of physical therapy indicative of a significant improvement in his condition. He underwent physical therapy before the first surgery, on the recommendation of Dr. Ahlgren (Tr. 145). However, Dr. Ahlgren also stated at the time that if this conservative treatment did not alleviate the Plaintiff's symptoms, surgical intervention might be necessary. *Id.* As it turned out, of course, surgery was performed in September of 2001. After his first surgery, he completed an eight-week physical therapy session. He tried to start a second session, but it aggravated his pain. He quit physical therapy at that time because his doctor told him that a second surgery was an option (Tr. 179-80).

In other words, Plaintiff discontinued physical therapy at this point not because his condition had improved, but because he opted for the more aggressive treatment suggested by his doctor.

In August of 2003, after the second surgery, the Plaintiff started a home exercise program (Tr. 180). That same month, treatment notes indicate that Plaintiff was not

attending physical therapy "secondary to cost," not because he had improved. Home exercise is free; physical therapy is not. SSR 96-7p, at 7-8, specifically cautions that "[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment," and goes on to state that "the individual may be unable to afford treatment and may not have access to free or low-cost medical services." Again, the ALJ failed to consider the record as a whole in ascribing Plaintiff's failure to attend physical therapy to an improvement in his condition.

In discounting the Plaintiff's credibility, the ALJ in this case also remarked that "[t]he claimant has characterized his pain as mild" (Tr. 16). It is true that the Plaintiff at times rated his pain at a 2 or 3 out of ten, but the ALJ took these statements out of context. For example, on July 27, 2001, the Plaintiff told the physical therapists that his pain was as low as 2 (although at times as high as 8), yet just weeks earlier, the pain was so intense that he sought emergency room treatment and was hospitalized for four days (Tr. 119). Further, on September 14, 2001, Plaintiff underwent his first surgery, which seems a rather aggressive treatment for someone with "mild" pain.

In January of 2003, Dr. Ahlgren noted that Plaintiff had increased pain with only minimal relief from pain medication, and in March, 2003, Plaintiff underwent the second surgery. A month after this surgery, the Plaintiff rated his pain at level 2, but he was taking

Vicodin every four to six hours (Tr. 130).  By August of that year, the Plaintiff complained of continuing pain, and although he rated it at level 2, he said there were "definite exacerbations," and that in addition to taking Vicodin, he had to frequently change positions from lying to standing to sitting.  His prescription for Vicodin was refilled (Tr. 126).[3]

Thus, while at a given time the Plaintiff might rate his pain at a two, the treatment records fully corroborate his testimony that the pain flares up often and at unpredictable times (Tr. 170-71).  It is that unpredictability, along with the intensity of the flare-ups and the need to both take Vicodin and lie down for relief, that impacts the Plaintiff's ability to sustain even sedentary employment on a sustained basis.

In *Davis v. Apfel,* 133 F. Supp. 2d 542, 547 (E.D. Mich. 2001) the court held that "[t]he reviewing court must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard." *Id.*  The court cautioned, however, that "a substantiality of evidence evaluation does not permit a selective reading of the record." *Id.*  Substantiality of the evidence must be based upon the record taken as a whole.  Substantial evidence is not simply some evidence, or even a great deal of evidence.  Rather, the substantiality of evidence must take into account whatever in

---

[3] The ALJ stated that after the second surgery, the Plaintiff used only Motrin for pain relief, and "was not taking significant pain medication on a regular basis" (Tr. 16).  This statement is contradicted by the record.  The Plaintiff testified that he takes Vicodin one to three times a day, four or five days a week (Tr. 170-71), which is consistent with the Vicodin prescription being refilled.  *See, e.g., Hamlin v. Barnhart*, 365 F.3d 1208 (10th Cir. 2004). In addition, the ALJ's finding that Plaintiff took no significant pain medication on a regular basis is inconsistent with his finding that "due to the claimant's pain complaints *and use of pain medication*, he will be restricted to no complex/detailed tasks" (Tr. 16).

the record fairly detracts from its weight." *Id.*; *Laskowski v. Apfel,* 100 F. Supp. 2d 474, 482 (E.D. Mich. 2000).  *See also Cotter v. Harris*, 642 F.2d 700, 706 (3rd Cir. 1981) ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record"); *Kent v. Schweiker*, 710 F.2d 110, 114 (3rd Cir. 1983) ("Nor is evidence substantial if it is overwhelmed by other evidence..."); *Hamlin v. Barnhart, supra*, 365 F.3d at 1224, quoting *Musgrave v. Sullivan*, 966 F.2d 1371,1374 (10th Cir. 1992)(evidence of non-disability cannot be considered "substantial" if it is "overwhelmed by other evidence in the record").

The ALJ's decision in this case, based on a selective and non-holistic assessment of the record, is not supported by substantial evidence. Nor is the ALJ's rejection of the Plaintiff's credibility supported by substantial evidence.  The overwhelming weight of the evidence shows that Plaintiff, an individual with a long work history, has suffered from intractable back pain since at least his claimed date of onset, and despite aggressive treatment, is unable to perform substantial gainful employment.  The VE clearly testified that assembly and packaging positions he listed were such that "besides the normal lunch breaks no more than 5 minutes out of an hour can be spent nonproductively."  (Tr. 183).  This record, viewed as a whole, does not support a finding that the Plaintiff can spend eight 55-minute hours doing production-type work.  As to the ticket taker position, the idea that someone with this level of back pain can find relief by sitting on a stool (Tr. 184) is fanciful at best.

Based on the errors in this case, a remand is required.  The remaining question is

whether this Court should reverse for an award of benefits or for further administrative proceedings. In *Faucher v.Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994), and *Newkirk v. Shalala,* 25 F.3d 316, 318 (6th Cir. 1994), the Sixth Circuit held that it is appropriate to remand for an award of benefits when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Faucher,* 17 F.3d at 176 (citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)).

In this case, given Plaintiff's objectively established back condition, along with the lack of any substantial evidence impacting on the credibility of his subjective complaints, I find that the proof of disability is strong and there is a dearth of evidence to the contrary. Therefore, the case should be remanded for an award of benefits.

## VI.   CONCLUSION

I therefore recommend that Defendant's Motion for Summary Judgment be DENIED, that Plaintiff's Motion for Summary Judgment be GRANTED, and that the case be remanded for an award of benefits.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1 (d)(2). Failure to file specific objections constitutes a waiver of any further right to appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 46, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Filing of objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local* 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1 (d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response should not be more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                S/R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Dated: January 29, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 29, 2007.

                                                S/Gina Wilson
                                                Judicial Assistant